IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-00902-BNB-KLM

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC.,

Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

Defendant.
_____

**ORDER**
_____

This matter is before me on **Defendant Union Pacific Railroad Company's Motion for Summary Judgment** [Doc. # 25, filed 12/30/2008] (the "Motion for Summary Judgment"), which is GRANTED.

I.

The action arises out of a rail accident occurring at Tri-State's facility near Craig, Colorado. The plaintiff describes the accident as follows:

> This action brought by Tri-State against Union Pacific . . . involves property damage caused by a train derailment at Tri-State's Craig Station ("Craig Station"). On October 3, 2006, a coal train, operated by Union Pacific employees, derailed as it traveled towards the Craig Station and through the Ash Track Switch (the "switch"). Because the switch was not set properly, one of the wheels of the 53rd railcar dropped off the track when the railcar passed through the switch. Subsequently, eight railcars derailed, causing varying degrees of damages to each, until the train was finally stopped and secured.

Final Pretrial Order [Doc. # 31, filed 2/23/2009] at p.2.

Based on the alleged facts, Tri-State has asserted two causes of action against Union

Pacific--negligence and negligence per se. Tri-State seeks to recover damages sustained by it as a result of the derailment. In letters sent by Tri-State to Union Pacific before suit was filed, Tri-State asserted damages of $302,880.37, made up of the following: (1) re-railing railcars ($45,805.40); (2) track repairs ($75,365.98); (3) ballast ($7,158.56); (4) investigation ($3,431.40); (5) damage assessment ($3,484.03); and (6) damage to railcars ($167,644). Deposition of William F. Haffner ("Haffner Depo.")[Doc. # 26-9] at Exh.2.

Union Pacific disputes that the derailment and resulting damages were caused by the failure of its employees to properly set the switch. It argues instead:

> The track in the area of the . . . switch is owned by Tri-State. Tri-State is responsible for the maintenance and upkeep of the track and the switch. . . . Tri-State either failed to maintain the switch properly, which caused the switch to open up as the train went over it, or employees of Tri-State threw the switch in their operations and failed to properly secure it.

Final Pretrial Order [Doc. # 31] at pp.5-6.

II.

1.      Tri-State and Union Pacific[1] are parties to the Rail Transportation Agreement. Motion for Summary Judgment at Exh.A-1 [Doc. # 26-3]. The Rail Transportation Agreement governs the transportation by Union Pacific of coal to Tri-State. The Rail Transportation Agreement contains a contractual limitations period, as follows:

---

[1] Union Pacific is the successor-in-interest to the Denver & Rio Grande Western Railroad Company ("DRGW") which initially entered into the Rail Transportation Agreement. Pursuant to Section 18, the terms of the Rail Transportation Agreement are binding upon Union Pacific as the successor to the DRGW. Rail Transportation Agreement [Doc. # 26-3] at p.18.

> Section 16.  CLAIMS PROCEDURES
>
> 16.1   Claims against DRGW for loss of or damages to Tri-States cars, coal, or other property, and claims against Tri-State for loss of or damage to DRGW's locomotives, cabooses, or other property, shall be made in writing, supported by relevant documentation, and shall be processed promptly through normally established claims procedures. Claims for loss and/or damage must be filed in writing by the injured party within three (3) months from date of delivery or expected date of delivery, and must be properly supported by copy of shipping document, condition, value and loss.  Any suit must be filed within one (1) year from the day when notice in writing is given by the other party that said party has disallowed the claim or any part or parts thereof.  Such claims, if valid, shall be satisfied by payment of money.

Rail Transportation Agreement [Doc. # 26-3] at pp.16-17.

2. The derailment at issue here occurred on October 3, 2006.  Final Pretrial Order [Doc. # 31] at Part 4 ¶1.

3. Tri-State sent its written notice of claim on December 28, 2006, Haffner Depo. [Doc. # 26-9] at Exh.1, which invoked the Claims Procedures of the Rail Transportation Agreement and states:

> On October 3, 2006 a coal train being operated by a Union Pacific crew derailed on the Craig Station plant site.  Pursuant to Section 16.1 of the above referenced contract [the Rail Transportation Agreement], this letter will serve as Tri-State's notice of claim for damage to seven (7) rail cars as well as costs associated with track repairs, re-railing of cars and clean-up costs.

4. Union Pacific responded to the written notice of claim by a letter dated March 16, 2007, stating:

> We have concluded our investigation into the causes and

>circumstances surrounding these two derailments. Based on the evidence, Union Pacific Railroad Company respectfully declines, in full, you claim for damages.

Haffner Depo. [Doc. # 26-9] at Exh.4.

5. Tri-State commenced this action against Union Pacific by filing a complaint in the District Court of Moffit County, Colorado, on March 25, 2008. Final Pretrial Order [Doc. # 31] at Part 4, ¶5.

### III.

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World

of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

"The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

IV.

Suit was filed more than one year after the date of Union Pacific's letter to Tri-State denying "in full" its written notice of claim, and beyond the one year contractual limitations period contained in the Rail Transportation Agreement. Contractual limitations periods are enforced by Colorado courts provided the period of time within which the action must be brought is reasonable and provided the provision has not been waived. Atchison, T. & S.F. Ry. Co. v. Baldwin, 128 P. 449, 422-23 (Colo. 1911); Hepp v. United Airlines, Inc., 540 P.2d 1141, 1143 (Colo. App. 1975); accord Grant Family Farms, Inc. v. Colorado Farm Bureau Mutual Ins. Co., 155 P.3d 537, 539 (Colo. App. 2006)(holding that "parties to a contract may require that actions founded on the contract be commenced within a shorter period of time than that prescribed by the applicable statute of limitations").

Tri-State argues first that the contractual limitations period contained in the Rail Transportation Agreement should not be applied here because its suit is brought in tort and not for breach of contract. In support of this argument, Tri-State relies on Lembke Plumbing and Heating v. Hayutin, 366 P.2d 673 (Colo. 1961).

In Lembke, the plaintiff brought suit against a plumber for negligently installing a pipe. The plumber defended arguing among other things that a term in the contract for services provided a contractual limitations period of one year, and suit had not been filed within that time. The Colorado supreme court rejected the contractual limitations defense, stating:

> The written contract was on a printed form supplied by Lembke. According to its terms, it "* * * lawfully expires one year from date." Lembke urges that this provides a one year statute of limitations. A contract, whether "expiring" lawfully or unlawfully, does not provide a substitute statute of limitations for acts of negligence in the absence of an express provision therefor. The contract here imposes no duty on Lembke to exercise due care and caution and the necessary degree of skill involved in a plumbing installation, provisions implied in every such contract. But, as shown by the authorities later cited, the duty upon Lembke was even more fundamental, to-wit: the common-law obligation to exercise due care, caution and skill resting on all persons and in all undertakings when the rights of others are involved. Although this duty may not be contractual, the law allows no vacuum and imposes the duty.

Id. at 337.

The contractual provision in Lembke is materially different from the contractual limitations provision at issue in this case. Here, in unmistakable terms, the parties agreed that "[c]laims against [Union Pacific] for loss of or damages to Tri-States cars, coal, or other property" must be brought within one year of the date Union Pacific gave written notice that it "has disallowed the claim or any part or parts thereof." Rail Transportation Agreement [Doc. # 26-3] at pp.16-17. Tri-State's claims are for damages to its rail cars, coal, and other property, and fall squarely within the terms of the limitations of action provision of the Rail Transportation Agreement.

Tri-State's argument that only claims alleging breach of contract can be subject to contractual limitations of actions provisions finds no support in Colorado law. To the contrary, in Atchison, T. & S.F. Ry., 128 P. at 422, the railroad raised a contractual limitations period in defense of a claim against it for negligence in the transport of cattle. The Colorado supreme court enforced the contract, holding that contractual limitations periods "do not in any way exempt the common carrier from negligence, but are conditions of recovery, and not exemptions from liability, which the carrier may lawfully include in its contract of shipment. . . ." Similarly, the court in Hepp enforced a contractual limitations period even though the plaintiff's claims were in negligence. 540 P.2d at 1142. Moreover, enforcing the unambiguous one year contractual limitations period contained in Section 16.1 will give effect to the mutual intent of the parties as expressed in the Rail Transportation Agreement. See Echo Acceptance Corp. v. Household Retail Services, Inc., 267 F.3d 1068, 1080 (10th Cir. 2001)(applying Colorado law).

Tri-State does not argue that a one year contractual limitations period is unreasonably short, and Colorado courts have upheld similar provisions. See Capitol Fixture & Supply Co. v. National Fire Ins. Co. of Hartford, 279 P.2d 435, 437 (Colo. 1955)(finding one year limitations period "is not unreasonable"); Atchison, T. & S.F. Ry., 128 P. at 422 (finding that a six month limitations period to bring a negligence action in connection with the shipment of goods "appears to be reasonable").

Tri-State does assert, however, that there is a disputed issue of material fact concerning whether Union Pacific waived its rights under Section 16.1 by "voluntarily and intentionally continuing settlement discussion for months" after Union Pacific's letter of March 16, 2006, rejecting the claim. Plaintiff's Response In Opposition to Defendant's Motion for Summary

Judgment [Doc. # 28, filed 1/20/2008] (the "Response") at p.11.  I disagree.

Under Colorado law, "[w]aiver is the voluntary relinquishment of a known right." Western Cities Broadcasting, Inc. v. Schueller, 830 P.2d 1074, 1079 (Colo. App. 1991). Although "the issue of waiver is generally a matter for factual determination by the trial court," Grimm Const. Co. v. Denver Board of Water, 835 P.2d 599, 602 (Colo. App. 1992), "the conduct alleged as a waiver must be free from ambiguity so as to manifest clearly such an intention."  Western Cities Broadcasting, 830 P.2d at 1079.

The facts here are substantially similar to those presented in Dove v. Delgado, 808 P.2d 1270 (Colo. 1991).  In Dove, the trial court granted summary judgment in favor of the defendant based on the applicable statute of limitations.  The Colorado supreme court affirmed the grant of summary judgment, ruling:

> Dove argues that Delgado should be equitably estopped from raising the statute of limitations as a defense.  Dove maintains that, while the limitations period was running, Delgado's insurer communicated a desire to settle Dove's claim and that these settlement discussions led Dove to believe that litigation would be unnecessary.
> 
> \* \* \*
> 
> [W]e consider Dove's reliance on settlement discussions with Delgado's insurer to be an unreasonable justification for failing to file within the requisite period of time.  We therefore reject Dove's contention that Delgado must be estopped from raising the statute of limitations as a defense.

Id. at 1275 (internal citations omitted).

Similarly, in Lee v. City and County of Denver, 482 P.2d 389 (Colo. App. 1971), the Colorado court of appeals affirmed the trial court's grant of summary judgment based on the defense of statute of limitations ruling:

> We do not quarrel with the general statement made by the plaintiff

> that a defendant may not raise the statute of limitations as a
> defense in those instances where the plaintiff was led to believe
> that compensation was to be forthcoming for the injuries received
> as a result of defendant's negligence.
>
> However, a necessary prerequisite in order for plaintiff to rely
> upon this doctrine is a showing of positive acts by the defendants
> which would have caused the plaintiff to fail to initiate her suit
> within the statutory period. None of the cases cited by plaintiff are
> in point with the circumstances of this case, for in each of the cited
> cases the defendant made some positive gesture which was
> understandably relied upon by plaintiff, who then failed to carry
> out a particular statutory requirement. For example, in Rice v.
> Granite School District, 23 Utah 2d 22, 456 P.2d 159, the
> defendant was estopped from pleading the statute of limitations as
> a defense because the defendant's insurance adjuster had admitted
> liability and promised compensation for plaintiff's injuries which
> representations were relied upon by the plaintiff who then failed to
> bring suit within the statutory period.
>
> Here, the affidavits, letters and depositions submitted prior to trial,
> only show that after receiving notice of plaintiff's injuries at the
> airport, the plaintiff was then asked to contact the defendant's
> insurance company. The resulting communication between
> plaintiff's attorney and the insurance company over the next
> several months merely concerned the particulars of the accident
> and the injuries sustained. The insurance company did not admit
> liability, nor did it promise to compensate plaintiff for her injuries.
> Since it did not admit liability, promise compensation, or in any
> other manner indicate that a suit would be unnecessary in order to
> recover, plaintiff cannot claim that she was entitled to rely upon
> these noncommittal contacts with the insurance company. We
> therefore conclude that the trial court was correct in finding
> Estoppel in pais not applicable to this factual situation.

Id. at 392 (internal citations omitted except as noted). Accord 54 C.J.S. *Limitations of Actions* § 43 (2005)(stating that "[a]n estoppel may arise from inducing a belief that a case can be settled without suit, but mere negotiations . . . that are not associated with a promise not to assert the statute of limitations are insufficient. . . . [M]ere good faith negotiations, as opposed to an actual settlement offer, do not estop a defendant from asserting a limitations defense, in the absence of

an express promise or agreement not to assert the statute," citing <u>Dove</u>, 808 P.2d 1270).

In this case, the undisputed evidence shows that Union Pacific did not in any way indicate that it would not invoke the contractual limitations provision, Haffner Depo. [Doc. # 26-9] at p.16 lines 17-21; the parties engaged in only general discussions about settlement; and no specific settlement terms were discussed.  Haffner Depo. [Doc. # 28-9] at p.12 lines13-22 and p.13 line 1 through p.14 line 3.  There is no evidence that Union Pacific admitted liability or promised to compensate Tri-State.  Tri-State has failed to point to any evidence of "positive acts" by Union Pacific which would have caused Tri-State to "fail to initiate [its] suit" within the limitations period specified in the Rail Transportation Agreement.  <u>Lee</u>, 482 P.2d at 392.  Consequently, Tri-State has failed to designate any facts showing that there is a genuine issue of fact concerning its claim that Union Pacific waived its rights under the contractual limitations period contained in Section 16.1 of the Rail Transportation Agreement.  <u>Celotex</u>, 447 U.S. at 324.

Here, as in <u>Dove</u>, 808 P.2d at 1275, Tri-State's reliance on generalized settlement discussions with Union Pacific is an unreasonable justification for failing to file its suit within the time allowed under the contractual limitations provision.  I reject Tri-State's contention that Union Pacific is estopped from raising the contractual limitations of actions section of the Rail Transportation Agreement as a defense.

V.

Tri-State's action is time barred under the one year limitations period contained in Section 16.1 of the Rail Transportation Agreement. Accordingly,

IT IS ORDERED that Union Pacific's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that all other pending motions are DENIED AS MOOT.

IT IS FURTHER ORDERED that the trial set to begin on August 17, 2009, is VACATED.

IT IS FURTHER ORDERED that Union Pacific may have its costs upon filing a bill of costs within ten days after entry of this order.  D.C.COLO.LCivR 54.1.

Dated April 23, 2009.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge